IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JERRY REED, | § | |
| | § | No. 214, 2020 |
| Defendant-Below, | § | |
| Appellant, | § | |
| | § | Court Below: Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| STATE OF DELAWARE, | § | |
| | § | ID No. 1809015387 |
| Plaintiff-Below, | § | |
| Appellee. | § | |
| | § | |

Submitted: June 23, 2021
Decided: August 11, 2021


Before **SEITZ**, Chief Justice; **VALIHURA**, **VAUGHN**, **TRAYNOR**, and **MONTGOMERY-REEVES**, Justices, constituting the Court *en Banc*.

Upon appeal from the Superior Court. **REVERSED** and **REMANDED**.

Patrick J. Collins, Esquire (*argued*), Collins & Associates, Wilmington, Delaware for Appellant.

Matthew C. Bloom, Esquire (*argued*), Delaware Department of Justice, Wilmington, Delaware for Appellee.

**VALIHURA**, Justice:

In this appeal we confront the situation where, prior to sentencing, defendant Jerry Reed ("Reed") sought to withdraw his guilty plea, but his counsel refused to file a motion to do so, apparently under the belief that no grounds justifying a plea withdrawal were present, and the Superior Court refused to consider his *pro se* motion because he was represented by counsel. As Reed put it, he became stuck in a Catch-22 due to the operation of two Superior Court Criminal Rules.[1]

In order to resolve the tension between the rules, we hold that a criminal defendant's control of the objectives of the representation prior to sentencing requires that counsel either obey an instruction to file a motion to withdraw a guilty plea, or seek leave to withdraw so that the defendant can file the motion with other counsel or *pro se.* Because the factual record in this case is incomplete, and because some of the Superior Court's factual findings are not supported by the record, we reverse and remand for additional fact-finding necessary to determine whether Reed's claims for ineffective assistance of counsel have merit.

---

[1] As explained herein, Reed was caught between Superior Court Criminal Rule 32(d) and Rule 47. Reed's lawyers refused to file his motion to withdraw his plea because they concluded that he could not satisfy Rule 32(d)'s requirement that he have a "fair and just" reason. And the Superior Court refused to consider his *pro se* motion because he was represented by counsel. Rule 47 states that, "[t]he court will not consider *pro se* applications by defendants who are represented by counsel unless the defendant has been granted permission to participate with counsel in the defense." Reed argues that "[t]he tension between Superior Court Criminal Rules 32(d) and 47 currently results in the inconsistent administration of justice in our trial courts" and that "[a] decision on the merits by this Court will resolve the conflict." Reply Br. at 3.

## I.  Relevant Facts and Background

On September 26, 2018, police found the body of Isaac Hatton ("Hatton") on the shoreline near a boat ramp for Portsville Pond in Laurel, Delaware.[2]  He had been shot to death in the early morning hours or very late the previous evening.  The charges in this case all stem from the events leading up to Hatton's death.

### A.  The Murder of Isaac Hatton

On the evening of September 25, 2018, Hatton was at the Little Creek Deli in Laurel, Delaware.  While he was at the deli, surveillance footage showed Hatton getting into a verbal altercation with others.  Thereafter, Hatton and several others left the deli.  Informants who claimed to be at the deli told police that two of the people who verbally confronted Hatton at the deli were Reed and Traevon Dixon ("Dixon").

After he left the deli, Hatton went to the Wexford Village Apartments, which is also located in Laurel.  Dixon, Reed, and others who had been at the deli confrontation went to the Wexford Village Apartments as well but left when residents told the group that they would call the police if the group did not vacate the area.[3]  From there, the group went to the Portsville Pond boat ramp.[4]  At some point as the altercation continued at the boat ramp, Dixon drew a firearm and repeatedly shot at Hatton,[5] who died of multiple gunshot wounds.

---

[2] App. to Op. Br. at A14 [hereinafter [A___"] (Detective Csapo's Affidavit in Support of Reed's Arrest Warrant).

[3] A34 (Detective Csapo's October 11, 2018 Preliminary Hearing Testimony).

[4] A15 (Detective Csapo's Affidavit in Support of Reed's Arrest Warrant).

[5] A32 (Detective Csapo's October 11, 2018 Preliminary Hearing Testimony).

Hatton's grandmother reported him missing shortly after midnight. Police discovered his body on the shoreline, along with several spent shell casings in the boat ramp launch area. During their investigation, police learned of a feud between Dixon and Hatton, and that Hatton intended to "expose" Dixon via social media.

Police arrested Dixon. After his arrest and *Miranda* warning, Dixon gave a statement confessing to having fired several shots at Hatton with a handgun at the boat ramp. Dixon also stated that Reed was at the boat ramp, and that after he shot at Hatton, Reed took out a handgun and fired at Hatton as well.[6]

In the end, the State's investigation indicates that about seven people were present at the boat ramp, including Hatton, and that four of them identified Reed as a shooter.[7] The State's investigation, in addition to discovering the Hatton/Dixon feud, also suggests Hatton owed Reed money. When police interviewed Reed, he admitted to being at the deli and the Wexford Village Apartments, but denied being at the Portsville Pond boat ramp.

### B. Procedural History

On November 5, 2018, a Sussex County grand jury indicted Reed and Dixon. The indictment[8] charged them each with Murder First Degree,[9] Conspiracy First Degree,[10]

---

[6] *Id.*

[7] A30. The fifth witness identified Reed as present but did not claim to have witnessed the shooting. A45–46. The sixth person present was Hatton himself, while the seventh, the State alleges, was Reed.

[8] A60–61(Indictment by Grand Jury).

[9] 11 *Del. C.* § 636(a)(1).

[10] 11 *Del. C.* § 513(1).

Possession of a Firearm by a Person Prohibited ("PFBPP"),[11] and Possession of a Firearm During the Commission of a Felony ("PFDCF").[12]

On May 29, 2019, the Superior Court granted a motion to sever so that the defendants could have separate trials. The Superior Court also ordered that Dixon be tried first and severed the PFBPP charge from the Murder First Degree charge.

On September 25, 2019, Dixon pleaded guilty to Murder Second Degree and PFDCF. The Superior Court sentenced him to a total of thirty-five years of incarceration at Level V, suspended after twenty years followed by additional periods of probation. In the plea agreement, Dixon agreed to testify against Reed at trial.[13]

At his January 6, 2020 final case review, Reed rejected an offer of a plea to Manslaughter and PFDCF with a *nolo contendere* resolution of the PFDCF charge.[14] The plea would have also resolved the severed PFBPP charge. There was no agreement as to a sentencing recommendation. The Superior Court engaged in a colloquy directly with Reed confirming his decision to reject that offer.

### C. Reed Enters a Plea

On January 13, 2020, Reed pleaded guilty to the lesser included offense of Manslaughter and *nolo contendere* to the PFDCF charge.[15] As part of his plea agreement,

---

[11] 11 *Del. C.* § 1448.

[12] 11 *Del. C.* § 1447A.

[13] A128 (Sentencing Hearing Transcript); *State v. Reed*, 2020 WL 3002963, at *1 (Del. Super. June 4, 2020) [hereinafter "*Trial Ct. Op.*"].

[14] A64–65 (Final Case Review Transcript dated January 6, 2020).

[15] A88–89 (Truth-in-Sentencing Guilty Plea Form).

the State entered a *nolle prosequi* to the remaining charges, including the severed PFBPP count. The plea agreement also provided for restitution and for no contact with Dixon or with Hatton's family, but otherwise contained no sentencing recommendation. This plea was materially identical to the one he had rejected a week earlier.

The Superior Court engaged in a colloquy with Reed to confirm Reed's understanding and agreement to the plea. Reed stated that he was satisfied with his legal representation.[16] Reed confirmed that he understood that he was waiving his trial and appeal rights. Reed confirmed that he was pleading guilty to manslaughter because he was guilty of that charge.[17] He confirmed that he was pleading no contest to the PFDCF charge as well and that he understood that the Superior Court could treat his no contest plea as if he had been found guilty or pleaded guilty to it for purposes of sentencing. Reed finally confirmed that his decision to so plead was voluntary:

---

[16] The following exchange appears in the transcript of that January 13, 2020 proceeding:

> THE COURT: Have you had a chance to review your case with [your attorneys]?
> THE DEFENDANT: Yes.
> THE COURT: Have they answered all your questions?
> THE DEFENDANT: Yes, sir.
> THE COURT: Are you satisfied with their representation of you?
> THE DEFENDANT: Yes.

A80 (Guilty Plea Transcript dated January 13, 2020).

[17] The following exchange occurred:

> THE COURT: Are you seeking to plead guilty to manslaughter because you are guilty of that charge?
> THE DEFENDANT: Yes, sir.

A82.

6

THE COURT:  Are you doing this voluntarily and of your own free will this morning?

THE DEFENDANT:  Yes, sir.[18]

Accordingly, the Superior Court found Reed's plea to be "knowingly, voluntarily, and intelligently entered."[19]

### D. Reed Attempts to Withdraw his Plea

Eight days later, on January 21, 2020, Reed wrote to the trial judge seeking to withdraw his plea.[20]

In the letter, Reed asserted that his attorney advised him "it was my best interest to take this plea weather I was innocent or not because if I would of went to Trial I was going to lose either way because I was going to be going up against a justice system that is set up to go against Black people and minorities and no matter what I was going to get found guilty of something."[21]  The letter also asserted Reed's claim to actual innocence.  He asserted in the letter that at his preliminary hearing the State concealed information about the autopsy and a ballistics report which would prove his innocence.  The letter further explained that his guilty plea reflects an admission that he is responsible for Hatton's death by another's hand:

> [My] Attorney had me take a Plea to Manslaughter saying that I Recklessly caused the death of the victim because alleged witnesses said that I instigated

---

[18] A83.

[19] A84.

[20] A100–103 (Letter dated January 21, 2020 from Reed to the Court).

[21] A100.

7

a fist-fight and a possessen [sic] charge of a firearm when I never had a gun nor did I ever fire any type of weapon/gun.[22]

Reed also stated that he believed that the State's witnesses were testifying only in exchange for their own non-prosecution, and as a result, he was "not being equally protected by the law."[23]

The judge sent the letter to Reed's counsel.[24]  For some reason, his letter was not docketed until February 21, 2020.  On February 6, 2020, Reed also filed a form letter to his counsel asking his counsel to file a motion to withdraw his plea.

Based upon Reed's counsel's February 6, 2020, letter to the Court concerning exhibits Reed wanted to present at sentencing, the State requested that the Superior Court hold an office conference to discuss the scope of the upcoming February 28, 2020, sentencing hearing.  At the conference held on February 17, 2020, the topic of Reed's guilty plea arose and the discussion, based upon our review of the transcript, appears to be limited to the following colloquy:

> THE COURT:  All right.  Another topic and I'm not sure we need to talk much about this, but we did get a copy of a letter from your client, [Defense Counsel], where he was talking about withdrawing his plea.  I've pretty much ignored it thinking that if you feel there is grounds for that we will deal with it.
>
> DEFENSE COUNSEL:  Well, *he wants to*, but there is no legal ground.  We thought there may be.  We went and investigated.  It turned out from a legal perspective there's no legal justification to withdraw the plea.

---

[22] A101 (alterations added).

[23] A100.

[24] *Trial Ct. Op.* at *1 ("Eight days after entering his plea, Reed wrote to me asking to withdraw them.  I am not permitted to consider motions from represented defendants.  I sent a copy of Reed's letter in which he sought to withdraw his pleas to counsel.") (footnote omitted).

THE COURT:  Okay.

THE STATE:  The State was aware that Mr. Reed wanted to withdraw the plea and then when I got this letter, it was kind of like, hey, we are going to rehash the entire trial in the form of sentencing when he's already taken a plea.  So that was the State's concern.

THE COURT:  Your point is well taken, [State's Counsel].  As I've said twice now, I don't intend to relitigate the liability issue.[25]

The call ended after this exchange.

On May 27, 2020, the Superior Court conducted a teleconference to attempt to recall this exchange.  The following exchange then occurred:

THE COURT:  Now let me just -- I want to confirm my recollection of this, either [Defense Counsel], you can tell me there was a letter that your client filed after he entered his guilty plea on -- which was on January 13th, and that letter was on January 21st in which he asked to withdraw his plea.  My recollection is we discussed that, and he withdrew that, and we went forward with the sentencing.  Is my recollection correct on that?

DEFENSE COUNSEL:  I don't recall that specifically.  I know when he filed it, and one of the grounds that he's identified, he informed us that there might be some other information out there, which I thought if it panned out might be a legal basis to withdraw the guilty plea.  As it turned out, that information did not pan out the way that we thought it would.  So, therefore, we did not have a legal basis to file a motion to withdraw the guilty plea because there was not new evidence or anything that would make the initial plea unknowing, unintelligent, or involuntary.

THE COURT:  Right.  But, [Defense Counsel], my recollection is that we either -- prior to or at the time that I sentenced him, we dealt with this issue and determined that there is no basis to withdraw.

DEFENSE COUNSEL:  I put that on the record, yes.

---

[25] A98 (Transcript of Office Conference dated February 17, 2020) (emphasis added).

9

THE COURT: Right. Yeah. Okay. That's what I really wanted to confirm because I think it affects how I look at the rest of the case.[26]

The State's counsel stated that she "remember[ed] Your Honor and defense counsel discussing it at the sentencing."[27] But as discussed below, there is no such discussion reflected in the transcript of Reed's sentencing hearing.

### E. Reed is Sentenced

The Superior Court held Reed's sentencing hearing on February 28, 2020.

At the sentencing hearing, Reed and the State presented starkly different accounts of the crimes encompassed in Reed's plea.

As Reed's counsel described it:

We know that Quandre Winder and Isaac Hatton were in a dispute at the deli. We know that sometime during that dispute, Winder said he needed his gun, and Traevon Dixon sent Jerry [Jermaiz] Hopkins to get it. When he returned from the Little Creek Apartments, he passed that off to Dixon who passed it off to Winder. We know that Dixon and Winder also changed out of their original clothes and into dark clothing while the dispute continued. Getting ready for something.[28]

Reed's counsel emphasized that Reed himself was not present at the deli for most of those events; when he was at the deli he had little to no interaction with Hatton, Quandre Winder ("Winder"), or Dixon; and that both the surveillance footage and every witness except Dixon confirmed that. In Reed's counsel's recitation of events, Winder and Hatton continued their confrontation at the Wexford Village Apartments, where Winder threatened

---

[26] A175–176 (Transcript of Office Conference dated May 27, 2020).

[27] A178.

[28] A113 (Sentencing Hearing Transcript) (alteration added).

Hatton with a gun. When a neighbor threatened to call the police, the people present dispersed, and Reed's counsel concedes that at that time Reed "encouraged them to go to the boat ramp and fight it out."[29] Reed's position is that Dixon, and Dixon alone, shot and killed Hatton at the boat ramp, and that Dixon thereafter went to the police and sought to cast suspicion on Reed initially claiming he (Dixon) was not even there, and only when confronted with evidence of his own involvement did Dixon change his story confessing that he "did it" while blaming Reed as the instigator.[30]

Reed read a letter directed to Hatton's family apologizing for his role in Hatton's death by encouraging a fistfight between Winder and Hatton but insisting that he never had a gun and that Dixon was the only shooter.

The State's position was very different. As the State characterized it, Dixon and Hatton both owed Reed money, and Dixon shot Hatton on Reed's instructions while believing that either he or Hatton would be murdered. The State further alleged that Dixon's gun jammed, and Reed himself then shot Hatton. The State represented that Dixon, Hopkins, and Winder all said that Reed shot Hatton. Another individual, Tyler Daniels, agreed.[31] The State conceded that there was no ballistic evidence to support use of a second gun in Hatton's murder, but noted that "we believe that Jerry Reed had a

---

[29] A114.

[30] A114–15.

[31] A133. Another person present at the boat ramp, Thomas Brown, did not identify a shooter. A137.

11

revolver, which is consistent with some of the witness statements."[32]   The State also

discussed Reed's extensive history of delinquent and criminal conduct.   The State's

position was that, although his plea was for Manslaughter and PFDCF, nevertheless "any

sentence for Jerry Reed should exceed the sentence that was given to Traevon Dixon."[33]

The Superior Court found that substantial evidence pointed to Reed as the shooter.

The Superior Court further identified a number of aggravating factors that the State had

proven, including Hatton's vulnerability, Reed's lack of remorse, his prior violent criminal

conduct, and a lack of amenability to lesser sanctions, while concluding that no mitigating

factors had been established.   In all, the trial judge opined that had the charges been the

same he would have imposed a greater sentence on Reed than he had on Dixon, but that in

deference to the "sanctity of the plea" he would instead give a comparable sentence.[34]

As a result, the Superior Court sentenced Reed to an aggregate of twenty years of

unsuspended Level V incarceration, followed by decreasing levels of supervision.[35]   This

was the same length of unsuspended Level V incarceration that Dixon had received.

The subject of Reed's attempt to withdraw his plea was not raised by Reed or the

Court.  The State briefly mentioned Reed's attempted withdrawal as evidence that Reed

---

[32] *Id.*

[33] A136.

[34] A143.

[35] A148–151 (Sentencing Order).   Specifically, Reed was sentenced as follows: (i) for Manslaughter, twenty-five years at Level V incarceration, suspended after fifteen years for three years of decreasing levels of supervision; and (ii) for PFDCF, five years at Level V incarceration.[35]

had not accepted responsibility for his actions.[36] The State's comment prompted no further discussion of the topic.

### F. Post-Conviction Proceedings

Reed did not file an appeal. Instead, Reed filed three *pro se* motions in the Superior Court. First, he filed a *pro se* motion to withdraw his guilty plea pursuant to Superior Court Criminal Rule [hereinafter "Rule"] 32(d), docketed March 2, 2020.[37] He listed eight grounds for relief.[38]

Second, March 31, 2020, Reed filed a *pro se* motion for postconviction relief under Rule 61.[39] He asserted the following seven grounds: (i) his counsel was ineffective for not

---

[36] In this regard, the State argued:

> Jerry Reed originally signed the plea in this case and then backed out of the plea. He then signed the plea and went through with the plea and then immediately wrote to Your Honor and asked to be let out of the plea. Even here today he has continued to distance himself from his role in this case.

A135 (Sentencing Hearing Transcript).

[37] Though docketed three days after his sentencing, in several places the putative Motion is labeled "February ___, 2020." A156–59 (Putative *Pro Se* Plea Withdrawal Motion). We note that March 2, 2020 was the Monday following Reed's sentencing which had occurred the previous Friday on February 28, 2020. Because the only way Reed could file a motion *pro se* was by mail, it appears highly likely that Reed had mailed his motion to withdraw prior to sentencing. If so, that timing undermines the suggestion that he had changed his mind about filing his motion to withdraw his plea prior to sentencing.

[38] The grounds were: (i) insufficient evidence of his guilt; (ii) the ballistics evidence suggested that there was only one shooter; (iii) the State deprived him of equal protection under the law by entering into cooperation agreements with certain witnesses rather than prosecuting them; (iv) his counsel failed to alert him to a lie in the police reports; (v) the physical evidence proved his innocence; (vi) Dixon gave a prior inconsistent statement to the police about whether Reed ordered him to shoot Hatton; (vii) his counsel should not have told him to accept the plea because Dixon already admitted to shooting Hatton; and (viii) his counsel told him that he should plead guilty rather than fight a system that is biased against "Black people and minorities." A157–59.

[39] This was Reed's first Rule 61 motion and the trial court stated that Reed did not request counsel and thus had waived that right. *Trial Ct. Op.* at *3.

13

filing a motion to withdraw the plea upon Reed's request; (ii) his counsel coerced his guilty plea by telling Reed, "that if [he] go[es] to trial, [he] was going to lose and get found guilty either way because [he] was going up against a system that's already against Blacks and minorit[ies] to lose;" (iii) the State denied him "equal protection of the law" by entering cooperation agreements with certain witnesses; (iv) the trial judge was biased against him at sentencing; (v) the prosecutor brought up his past crimes at sentencing, including conduct for which he was not convicted; (vi) his counsel failed to present evidence of his innocence, including that Dixon made a prior inconsistent statement; and (vii) the police lied in their report.[40]

Third, on April 13, 2020, Reed filed a *pro se* motion for sentence modification pursuant to Rule 35.[41]

With regard to his Rule 61 motion, the Superior Court directed Reed's counsel to submit an affidavit responding to his allegations. In response to Reed's plea withdrawal claim, his attorneys jointly averred that:

> Denied. Defendant asked counsel to withdraw his guilty plea multiple times, in person and in writing. The execution of the plea on the record was knowing, intelligent and voluntary. Therefore, counsel believed that the only potential legal basis for a withdrawal of the plea was based on new evidence, specifically the potential that Jermaiz Hopkins had changed the statement he gave police. Counsel followed up on that information to determine if it had

---

[40] A163–64 (Rule 61 Motion).

[41] In that motion, Reed contended that: the prosecutor improperly referred to past crimes for which he was never convicted; that he had accepted responsibility for his actions and that he accepted "the fact that by [his] being a part of instigating the fight is a reason that the victim was killed which is a big part in this;" that "the presumptive sentence for a charge of manslaughter is 2–5 years at level 5 incarceration and I was sentenced to 15 years for manslaughter and the penalty range is '2–25 years;'" and that his attorneys advised that he would receive a seven to ten-year sentence. A166 (Rule 35 Motion).

merit. When counsel determined there was no merit. [sic] Counsel declied [sic] to file the motion because there was no legal basis.[42]

As to Reed's assertion that his guilty plea had been coerced, counsel responded that:

Denied. Counsel did advise Defendant that there was substantial evidence upon which a jury could find him guilty, the probable make up of the jury pool, the many ways the evidence could be viewed, the potential outcomes based on our theory of defense and the State's theory of guilt versus the offered plea. We did advise the Defendant that we believed it was in his best interest to accept the plea; however, we also advised him that it was his decision and only he could decide whether or not to accept the plea. Furthermore, we advised him we were prepared and willing to go to trial.[43]

### G. The Decision Below

On June 4, 2020, the Superior Court denied Reed's Rule 61 Motion.[44]

In its recitation of the facts, the Superior Court discussed Reed's attempts to withdraw his plea:

Almost immediately Reed had second thoughts. Eight days after entering his plea, Reed wrote to me asking to withdraw them. I am not permitted to consider motions from represented defendants. I sent a copy of Reed's letter in which he sought to withdraw his pleas to counsel. *On several occasions I was advised by defense counsel that Reed did not want to withdraw his plea and wanted to proceed to sentencing. One of the occasions where withdrawal of the pleas was discussed was at Reed's sentencing, and, of course, in his presence.*[45]

Thus, the Superior Court found, mistakenly we think, that counsel had advised the court on several occasions that Reed did not want to withdraw his plea. We also question

---

[42] A169 (Affidavit in Response to Defendant's Motion for Postconviction Relief dated May 13, 2020).

[43] A169–170.

[44] *See generally*, *Trial Ct. Op*.

[45] *Id*. at *1 (emphasis added).

15

the implication that this topic was meaningfully addressed at Reed's February 28, 2020 sentencing hearing. The Court went on to hold that "this [plea withdrawal] issue was raised and ultimately withdrawn, by defendant prior to his sentencing. He has knowingly waived the claim."[46] Later in the opinion, the court held that, "the issues raised by Reed concerning withdrawal of his pleas are not new. He raised, then withdrew, them prior to sentencing."[47] Based on its understanding of the record, the court held that Reed had therefore "knowingly waived the claim."[48] Having thus concluded that Reed had decided not to press his motion to withdraw his plea, the court then found that with respect to his efforts to withdraw his plea, Reed "does not point to any conduct of counsel which is inadequate."[49]

The Superior Court also rejected Reed's claim that his guilty plea was coerced by his trial counsel telling him that he would not receive a fair trial due to his race. The Superior Court regarded this claim as factually "incredible," but reasoned that even if it were true, "it would not affect my view that defendant acted voluntarily in entering his pleas."[50]

The Superior Court likewise found Reed's other claims to be meritless. Reasoning that the State's charging decisions and agreements with respect to defendants are

---

[46] *Id*. at *3.

[47] *Id*.

[48] *Id*.

[49] *Id*. ("There is no basis to find that Reed has met the first prong of the *Strickland* burden.").

[50] *Id*. at *4. The Superior Court added that "[t]he bold and conclusory allegation that the pleas were 'coerced' does not change the answers to my questions at the plea colloquy in which [Reed] stated he was acting of his own free will." *Id*.

appropriate topics for cross-examination but not equal protection violations, the Superior Court found those cross-examination rights waived by Reed's decision to forgo trial.

The Superior Court also explained its reasoning for imposing a comparable sentence on Reed as it had on Dixon, even though Dixon's sentence was pursuant to a more serious category of homicide, namely Murder Second Degree. The Superior Court stated it was "convinced Reed was the instigator in the events which led to Isaac Hatton's death," and that "Reed knew that Dixon brought a gun to the fight, and Reed brought one himself."[51] It credited Dixon's explanation that his own actions were driven by fear that Reed would kill him if he did not shoot Hatton. Likewise, the Superior Court viewed Reed's criminal record, looking only at offenses resulting in convictions, as reflecting extensive and escalating violence which, "in retrospect, inevitably led to the events which caused Hatton's death."[52] Finally, the Superior Court interpreted Reed's deportment as reflecting a lack of remorse and an emotionless detachment, especially as compared with Dixon.

Reed filed a timely Notice of Appeal.

## II.     Contentions on Appeal

Reed raises two issues on appeal. First, he contends that his right to an autonomous determination of his plea was violated when his attorney refused to file his requested motion to withdraw his guilty plea prior to sentencing and when the Superior Court refused

---

[51] *Id*. at *5.

[52] *Id*. ("[w]hile the law allows comment on them I do not put credence in uncharged or dismissed charges," but "[w]hat Reed's record of convictions did show to me is an increasing level of violence which unfortunately and, in retrospect, inevitably led to the events which caused Hatton's death.").

to consider his timely *pro se* motion to withdraw his plea. Second, he contends that the Superior Court erred in denying his Rule 61 motion for postconviction relief because he effectively was deprived of counsel when his counsel refused to file a motion withdrawing his guilty plea.

### III. Standard and Scope of Review

This Court reviews the Superior Court's denial of a motion for post-conviction relief for an abuse of discretion.[53] We review "legal or constitutional questions, including ineffective-assistance-of-counsel claims, *de novo*."[54]

### IV. Analysis

The Sixth Amendment to the Constitution of the United States provides that "[i]n all criminal prosecutions, the accused shall enjoy the right. . . to have the Assistance of Counsel for his defence."[55] The United States Supreme Court has explained that contained within that guarantee "is the right to the *effective* assistance of counsel."[56] The right to effective assistance of counsel is not limited only to the trial, but additionally "applies to pretrial critical stages that are part of the whole course of a criminal proceeding, a

---

[53] *Purnell v. State*, --- A.3d ----, 2021 WL 2470511, *32 (Del. June 17, 2021); *Swan v. State*, 248 A.3d 839, 856 (Del. 2021) (citing *Richardson v. State*, 3 A.3d 233, 237 (Del. 2010)).

[54] *Purnell*, --- A.3d at ----, 2021 WL 2470511, at *32 (citing *Swan*, 248 A.3d at 856).

[55] U.S. Const. amend. VI. This Court recently has reiterated this basic principle. *See Purnell*, --- A.3d at ----, 2021 WL 2470511, at *41 ("The right to counsel is the foundation for our adversary system. The right is a bedrock principle of justice. Defense counsel tests the prosecution's case to ensure that the proceedings serve the function of adjudicating guilt or innocence, while protecting the rights of the person charged.") (footnotes omitted).

[56] *Buck v. Davis*, 137 S. Ct. 759, 775 (2017) (quoting *Strickland v. Washington*, 466 U.S. 668, 686 (1984)); *Purnell* --- A.3d at ----, 2021 WL 2470511, at *4 (same).

18

proceeding in which defendants cannot be presumed to make critical decisions without counsel's advice."[57] Among these critical phases is "the negotiation of a plea bargain"[58] because "[b]efore deciding whether to plead guilty, a defendant is entitled to the 'effective assistance of competent counsel.'"[59] This Court has further held, as have federal appellate courts, that a hearing to *withdraw* a guilty plea is also a critical stage of the criminal process covered by the right.[60] The parties here do not dispute that.[61]

### A. Reed Has Waived His Autonomy Claim

For the first time, Reed makes a freestanding claim that he was denied a fundamental right to determine his own plea.[62] Thus, Reed is not appealing his conviction or sentence. Rather, he appeals the denial of his collateral motions. The State contends that because he did not fairly present the claim at sentencing or in his postconviction collateral motions

---

[57] *Lafler v. Cooper*, 566 U.S. 156, 165 (2012).

[58] *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010).

[59] *Id.* at 364 (citing *McMann v. Richardson*, 397 U.S. 759, 771 (1970) and *Strickland*, 446 U.S. at 686).

[60] *White v. State*, 748 A.2d 914, 2000 WL 368313, at *1 (Del. Mar. 23, 2000) (TABLE) ("[T]he defendant was entitled to the appointment of counsel at the plea withdrawal hearing because it occurred prior to sentencing at a critical stage of the criminal process.") (citing *United States v. Crowley*, 529 F.2d 1066, 1069 (3d Cir. 1976) and *United States v. Sanchez-Barreto*, 93 F.3d 17, 20 (1st Cir. 1996) ("A plea withdrawal hearing is a 'critical stage' in the criminal proceeding.")).

[61] *See* Ans. Br. at 27 (acknowledging that "[a] plea-withdrawal hearing is indeed a critical stage.").

[62] Reed acknowledges that "his attorneys failed to raise this claim below," but argues that "that this is a structural error not subject to harmless error review." Op. Br. at 25. "We generally decline to review contentions not raised below and not fairly presented to the trial court for decision." *Turner v. State*, 5 A.3d 612, 615 (Del. 2010) (citing Del. Sup. Ct. R.8; and *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986)). The doctrine of plain error is limited to "material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice." *Wainwright*, 504 A.2d at 1100.

19

filed in the Superior Court, absent plain error, Reed has waived the claim. However, without conceding the merits of it, the State agrees that Reed's derivative ineffective assistance of counsel claim is a viable avenue of recourse.[63] We agree.

This Court previously has described a criminal defendant's right to decide how to plead to a charge as being an "autonomy interest."[64] We have held that a defendant's "autonomy" includes having a final say in plea decisions, which extends to an absolute and unqualified right to withdraw a plea *until the court accepts it*.[65] By contrast, once the Superior Court accepts a defendant's guilty plea, whether the defendant may withdraw the plea and how to do so are questions governed by the Superior Court Criminal Rules and our case law.[66] Following a procedurally proper acceptance of plea, the defendant must, under Superior Court Criminal Rule 32(d), establish a "fair and just" reason in order to have a plea withdrawn prior to sentencing.[67] The burden of demonstrating a "fair and just"

---

[63] Ans. Br. at 18–21.

[64] *Taylor v. State*, 213 A.3d 560, 568 (Del. 2019).

[65] *Id*. In *Taylor*, this Court held that defense counsel's refusal to withdraw Taylor's plea violated Taylor's Sixth Amendment autonomy interest to decide the objective of his defense. *Id*. at 563. We stated that "Taylor had the final say whether to withdraw his plea before the court accepted it," and that "[h]aving represented to the court that Taylor was competent to plead guilty, defense counsel should have followed Taylor's demand to withdraw his plea before the court accepted it." *Id*.

[66] *Id*. at 568–69. Thus, while a trial court is considering whether to accept a plea of guilty but mentally ill, the defendant retains the right to withdraw the plea without a need to justify that decision. *Id*. *See also United States v. Jones*, 336 F.3d 245 (3d Cir. 2003) (construing Fed. R. Crim. P. 32(e) to mean that "[o]nce a court accepts a defendant's guilty plea, the defendant is not entitled to withdraw that plea simply at his whim," but instead must have a "fair and just" reason).

[67] Superior Court Criminal Rule 32(d) states in its entirety:

(d) *Plea Withdrawal*. If a motion for withdrawal of a plea of guilty or *nolo contendere* is made before imposition or suspension of sentence or disposition without entry of a judgment of conviction, the court may permit withdrawal of the

20

reason falls on the defendant and that burden is substantial. A criminal conviction is not final until a sentence is imposed.[68]

Just such a procedurally proper plea colloquy occurred here. The Superior Court rules identify what rights the trial court must advise the defendant of prior to accepting the plea to ensure the plea is informed,[69] and what inquiries the trial court must make to ensure the agreement is voluntary.[70] The trial judge engaged in a plea colloquy with the defendant directly, confirming that Reed understood the meaning and import of the plea agreement's terms, and what procedural and substantive rights he was surrendering.

It is undisputed that the trial judge conducted a conforming colloquy in this case, as Reed agrees that "the plea procedure was free from defect and the consent to the plea was knowing, intelligent, and voluntary."[71] But Reed alleges that his counsel provided him with improper advice in advance of his plea that led him to understand that because of his race, the trial rights he was surrendering were a mere formality and that a conviction was inevitable irrespective of his factual guilt. He argues that the ineffectiveness of his counsel

---

plea upon a showing by the defendant of any fair and just reason. At any later time, a plea may be set aside only by motion under Rule 61.

[68] *Potts v. State*, 197 A.3d 1040, 2018 WL 6015781, at *1 (Del. Nov. 15, 2018) (TABLE) (citing *Hunter v. State*, 209 A.2d 469, 470 (Del. 1965)); *Schoolfield v. State*, 655 A.2d 1225, 1995 WL 111183, at *1 (Del. Mar. 6, 1995) (TABLE) (citing *Eller v. State*, 531 A.2d 948, 949 (Del. 1987)).

[69] Super. Ct. Crim. R. 11(c).

[70] Super. Ct. Crim. R. 11(d).

[71] Op. Br. at 35. *See also Sanchez-Barreto*, 93 F.3d at 23 (noting that the federal Rule 11 is designed to safeguard against involuntary guilty pleas, and so general allegations of coercion, without more, are insufficient to establish a trial court's abuse of discretion in disallowing a plea withdrawal motion).

21

in advising him regarding "prejudice in the justice system" effectively "coerced him into the plea."[72] In addition, with support in the record, he asserts that he sought to withdraw his plea, both by instructing his counsel to do so, and attempting to sidestep his counsel and make a motion to the judge directly. He argues that his counsel failed to appropriately consider the *Scarborough* factors and as a result, improperly refused to file his motion.[73]

We agree that Reed is constitutionally guaranteed effective counsel during the plea process. We have made clear that the time between entry of a plea and its maturation into a final judgment of sentence is a "critical stage in the criminal process."[74] Because he did not fairly present his separate autonomy challenge below and because Reed's challenges focus on the propriety of his counsel's representation during the plea process leading to sentencing, we consider his challenges in the context of his Rule 61 ineffective assistance of counsel claims.

### B. The Superior Court Erred In Denying Reed's Rule 61 Motion Without an Evidentiary Hearing

Reed's arguments on appeal focus on the first two grounds of his Rule 61 motion, namely, that his counsel's ineffective assistance caused him to enter a plea that he otherwise would not have agreed to, and that his counsel's ineffective assistance prevented him from withdrawing the plea before sentencing. The State and Reed disagree about what standard a reviewing court should apply to these claims.

---

[72] Op. Br. at 35.

[73] *See Scarborough v. State*, 938 A.2d 644 (Del. 2007).

[74] *White*, 2000 WL 368313, at *1.

The State, like the Superior Court, argues that both claims should be analyzed under *Strickland*.[75] The *Strickland* standard requires a defendant to carry "the burden of establishing (i) that counsel's representation fell below an objective standard of reasonableness and (ii) that the deficiencies in counsel's representation caused him substantial prejudice."[76]

The second *Strickland* prong, the "prejudice prong," requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[77] A "reasonable probability" means a probability sufficient to undermine confidence in the outcome, and "[t]he likelihood of a different result must be substantial, not just conceivable."[78]

Reed contends that, rather than *Strickland*, his claim regarding his efforts to withdraw his plea should be analyzed under *United States v. Cronic*,[79] a case decided the same day as *Strickland*. Though similar to *Strickland*, *Cronic* applies in a narrow set of circumstances where the deprivation of effective counsel is "so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified."[80] *Cronic* applies where the deprivation of counsel is total, as when "the accused is denied counsel at

---

[75] *Strickland v. Washington*, 466 U.S. 668 (1984).

[76] *Swan*, 248 A.3d at 858–59 (citing *Green v. State*, 238 A.3d 160, 174 (Del. 2020)).

[77] *Starling v. State*, 130 A.3d 316, 325 (Del. 2015) (quoting *Strickland*, 466 U.S. at 694).

[78] *Id*. (quoting *Harrington v. Richter*, 562 U.S. 86, 112 (2011)).

[79] 466 U.S. 648 (1984).

[80] *Id*. at 658.

23

a critical stage of his trial" entirely.[81]  But even when a defendant is nominally represented, *Cronic* relieves a defendant of the burden of showing prejudice when the circumstances are such that "the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial."[82]  Such cases involve the "constructive denial of counsel,"[83] which requires that the circumstance demonstrate the "complete breakdown," either "in the adversarial process"[84] or in attorney-client communication.[85]

No such breakdown occurred here, and so we hold that *Strickland* applies to Reed's claims, namely, to his challenge based upon the advice regarding the fairness of the justice system in Sussex County as it relates to "Black people and minorities" (the "Advice" claim), and to Reed's attempts to withdraw his plea before sentencing (the "Withdrawal" claim).  During that critical period, Reed was actively represented by two attorneys, and he actively communicated with them.  Reed's counselors explain, and Reed does not dispute,

---

[81] *Id*. at 659 (citing cases); *see also Urquhart v. State*, 203 A.3d 719, 730 (Del. 2019) ("A complete denial of counsel occurs when a criminal defendant must navigate a critical stage of the proceedings against him without the aid of an attorney dedicated to the protection of his client's rights under our adversarial system of justice.") (internal quotation omitted).  In *Cooke v. State*, this Court observed that in *Cronic*, "the United States Supreme Court held that there are three scenarios in which the defendant need not satisfy the *Strickland* test, because prejudice is presumed: (1) where there is a complete denial of counsel; (2) where counsel entirely fails to subject the prosecution's case to meaningful adversarial testing; and (3) where counsel is asked to provide assistance in circumstances where competent counsel likely could not."  977 A.2d 803, 848 (Del. 2009); *see also Urquhart*, 203 A.3d at 729.

[82] *Cronic*, 466 U.S. at 559–60.

[83] *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1915 (2017).

[84] *United States v. Lustyik*, 833 F.3d 1263, 1269 (10th Cir. 2016).

[85] *Daniels v. Woodford*, 428 F.3d 1181, 1197 (9th Cir. 2005).

that they considered his instructions to withdraw the plea and investigated whether the foundation they believed necessary for such a motion could be established. Failing to find such a foundation, they did not file the motion under the belief it would be frivolous. As we explain below, it appears, although it is not clear from the record before us, that Reed's counsel misunderstood the applicable standard,[86] and so these circumstances fit squarely in the *Strickland* framework concerning an attorney's error, rather than the *Cronic* standard limited to constructive denial of counsel.

### 1. Whether Reed's Counsel Were Ineffective With Respect to Legal Advice Which May Have Induced Reed's Plea

In his *pro se* motions to withdraw his plea, and again in his Rule 61 Motion, Reed contends that his trial counsel told him that he would be convicted irrespective of his guilt because of his race. When he entered his plea, and when he engaged in the plea colloquy with the trial judge, Reed claims to have been operating under that advice.

Without conceding that it occurred in this case, the State agrees that it would be objectively unreasonable for an attorney to give such advice.[87] We agree. If Reed's

---

[86] Reed argues in his Opening Brief that "[t]he record amply reflects that defense counsel thought the plea could only be withdrawn upon a showing of actual innocence. Obviously, this is not so. Our jurisprudence clearly states five factors require consideration." Op. Br. at 35.

[87] As the State ably explained at oral argument, our legal system has tools which defense attorneys, the State, and the courts use to detect racial bias and to try to prevent it from affecting the trial process, making the advice Reed alleges he received objectively unreasonable:

> Now, the world isn't perfect, and lawyers have to operate with their clients in an imperfect world, and there's a lot of social science out there trying to determine the effect that a defendant's race or the victim's race or a juror's race or even the sentencing judge's race has on the impact or has on the outcome in the criminal justice system. But to advise a defendant that the system is stacked against them, that prejudice is built into the system, where we have *voir dire* to try to suss out juror bias, where we have instructions from the judge, and jurors who work hard to

counsel had instructed him that he would not receive a fair trial, that would fall below an objective standard of reasonableness and satisfy the first prong of *Strickland*. We also think that if his counsel gave him such advice, there is a reasonable probability that had counsel not made such an error, Reed would not have entered a plea and the second *Strickland* prong would be satisfied.[88] Thus, Reed's Advice challenge goes to the issue of the voluntariness of his plea itself, and resolution of this issue involves determining whether the plea can stand.

Reed's assertion is a serious one, and the trial court did not conduct an evidentiary hearing to evaluate whether Reed's claim is true. Nor does a review of the record reveal the answer as to what advice was actually given, as counsel's affidavit includes denials which are either general or ambiguous. Without an evidentiary hearing directly probing the question of whether Reed's attorney told him words to the effect that a Black man will not receive a fair trial in Sussex County, this Court cannot fully evaluate Reed's ineffectiveness assistance of counsel claim.

---

try to follow those instructions, where we place the highest standard in the law on the State, proof beyond a reasonable doubt, where we require jury unanimity, to say that the system is stacked against him and to just give up and plead guilty, this Court can't put its stamp of approval, can't endorse that type of advice. So yes, it would have to be objectively unreasonable.

Oral Argument video at 26:17 – 27:24 (available at https://livestream.com/accounts/5969852/events/9697322/videos/222680449/player).

[88] *See, e.g., Mapp v. State*, 642 A.2d 837, 1994 WL 91264, at *1 (Del. March 17, 1994) (TABLE) (explaining that in order to satisfy *Strickland's* prejudice prong, the defendant must make "concrete allegations of actual prejudice and substantiate them" and finding that the defendant "failed to satisfy the requirement that he show such actual prejudice, as he has made only conclusory allegations that he would not have entered the guilty plea but for the errors of trial counsel.").

We are struck by the general denial in the affidavit and the notable absence of any explicit refutation of that accusation. If the alleged statement had not been made, we would expect counsel in their affidavit to explicitly and specifically refute it. But here, the statement in counsels' affidavit that they advised Reed of the "probable make-up of the jury pool" indicates that Reed's claim might have at least some foundation in a remark counsel made in the course of the representation.

Apparently construing the general denial as containing a specific denial of Reed's alleged statement, and then crediting that denial, the trial judge made a credibility finding without conducting an evidentiary hearing.[89] We find that to be error. Accordingly, we remand for an evidentiary hearing for the court to determine the advice given to Reed relating to Reed's Advice issue, and whether and how that advice affected the voluntariness of his plea.

---

[89] The following exchange occurred during the June 23, 2021 oral argument before this Court:

> THE COURT: So, since the trial judge made essentially a credibility finding on that, shouldn't there have been an evidentiary hearing?

> THE STATE: Well, your Honor, evidentiary hearings aren't required in these situations and the trial judge did expand the record by asking for the affidavit from his trial counsel, and while we can pick holes in exactly, was a general denial enough, should they have specifically denied it, should the judge have asked for more, the judge who has sat in these hearings, who has interacted with the parties and the attorneys, who then sees the allegation versus the response in this affidavit, felt he had enough to make that credibility determination. And he did make that credibility determination.

> THE COURT: Didn't he say that they denied making the statement when they never really did deny making the statement?

> THE STATE: The only conclusion I can draw from that is that he accepted the general denial as a specific denial.

Oral Argument video at 27:24 – 28:20 (available at https://livestream.com/accounts/5969852/events/9697322/videos/222680449/player).

27

## 2. Whether Reed's Counsel Was Ineffective for Not Filing a Motion to Withdraw Prior To Sentencing

Reed alleges that after the Superior Court accepted his guilty plea on January 13, 2020, but before sentencing, he instructed his attorneys to withdraw the plea. Reed's attorneys corroborate that Reed instructed them to withdraw the plea but they explain that they did not file the motion because they believed the only potential legal basis for a withdrawal of the plea was if there were new evidence of his innocence.

In the decision below, the Superior Court concluded that "[o]n several occasions I was advised by defense counsel that Reed did not want to withdraw his plea and wanted to proceed to sentencing."[90] However, we can find no support in the record for this statement. To the contrary, as noted above at the office conference eleven days before the sentencing hearing, Reed's attorneys confirmed to the trial judge that Reed wished to withdraw his plea but that they had not filed a motion because they believed there was no legal basis for one.[91] Similarly, the Superior Court asserts that "[o]ne of the occasions where withdrawal of the pleas was discussed was at Reed's sentencing, and, of course, in his presence."[92] Having reviewed the transcript, we find no discussion of Reed's efforts to withdraw his plea at the sentencing hearing.[93] As noted above, the only reference was when the State

---

[90] *Trial Ct. Op.* at *1.

[91] A97–98 (February 17, 2020 Office Conference Transcript).

[92] *Trial Ct. Op.* at *1.

[93] The State's position is that it is fair to assume from this silence that at some point prior to sentencing Reed changed his mind again and repudiated his desire to withdraw the plea since he did not raise the issue at the sentencing hearing himself, and at that hearing "even explained his reasons for pleading guilty." Ans. Br. at 30–31. Construing the record in this way, the State argues that Reed's desire to withdraw his plea as of the office conference eleven days prior to sentencing

28

mentioned Reed's attempt to withdraw his plea as evidence that he was not accepting responsibility for his actions, but that mention generated no further comment on that topic.

"When a defendant is represented by counsel, the authority to manage the day-to-day conduct of the defense rests with the attorney."[94] Though the attorney has a "duty to consult with the defendant regarding 'important decisions,'" that "does not require counsel to obtain the defendant's consent to 'every tactical decision.'"[95] However, "certain decisions regarding the exercise or waiver of basic trial and appellate rights are so personal to the defendant that they cannot be made for the defendant by a surrogate."[96] Accordingly, we have recognized that a defendant's fundamental "autonomy" rights cannot be delegated. Such decisions include "whether to plead not guilty and have a trial by jury where he has an opportunity to confront and cross-examine adverse witnesses, and whether to testify."[97] As to these decisions, a lawyer "'must both consult with the defendant *and* obtain consent

---

and in his *pro se* filings shortly after sentencing might not be continuous and steadfast. Instead, the State speculates that in those eleven days, Reed repudiated his desire to withdraw the plea, but then after sentencing changed his mind yet again because he was dissatisfied with the sentence the Superior Court imposed. While a plausible explanation of events, the State's theory relies heavily on speculation as the record is incomplete on this point. *See, e.g., State v. Pringle*, 2011 WL 6000834, *5 (Del. Super. Nov. 17, 2011) ("one cannot overlook the possibility that [defendant] was and is 'gaming the system.'").

[94] *Cooke*, 977 A.2d at 840.

[95] *Id*. at 841 (citing *Nixon*, 543 U.S. at 187).

[96] *Id*.

[97] *Id*. at 842 (stating also that "[o]ne of the fundamental decisions reserved for the defendant alone to make is a plea decision."); *see also Taylor*, 213 A.3d at 568 ("[t]he accused has the 'ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal.'") (citations omitted).

to the recommended course of action.'"[98] Further, "[t]hese rights cannot be waived by counsel without the defendant's fully-informed and publicly-acknowledged consent."[99]

If Reed asked his counsel to file a pre-sentencing motion to withdraw his guilty plea and did not rescind that request and if counsel failed to file the motion or clear the way for Reed to file it himself, then his counsel's refusal constitutes deficient performance under *Strickland*.[100] We acknowledge that our decisional law on this point has not been consistent.[101] In order to remedy this problem, we now hold that a criminal defendant's

---

[98] *Id*. (emphasis in original).

[99] *Id*. *See also Taylor*, 213 A.3d at 568 ("'[c]ounsel cannot undermine the defendant's right to make these personal and fundamental decisions by ignoring the defendant's choice and arguing affirmatively against the defendant's chosen objective.'") (citations omitted).

[100] The State agrees. *See* Ans. Br. at 29–30 ("If Reed's allegation is true, then his counsel's refusal constitutes deficient performance. The decision whether or not to plead guilty is a fundamental decision that belongs to the defendant. The right encompasses the decision to pursue a plea-withdrawal motion. Thus, 'a lawyer who disregards specific instructions [to file a plea withdrawal motion] acts unreasonably.'") (citation omitted).

[101] As Reed correctly observes, defendants who have moved to withdraw their guilty plea in Superior Court are routinely appointed new counsel for that purpose, especially when the defendant raises claims of coercion or ineffective assistance of counsel. *See, e.g., Lane v. State*, 2006 WL 3703683, at *2 (Del. 2006) (noting that when the defendant moved to withdraw his guilty plea at the sentencing hearing, "rather than proceeding with the scheduled sentencing, the Superior Court appointed conflict counsel to assist Lane in pursuing his motion to withdraw his guilty pleas"); *Maddox v. State*, 2012 WL 385600, at *1 (Del. 2012) (noting that the Superior Court denied the defendant's motion to withdraw his guilty plea "after a hearing where Maddox was represented by new counsel"); *State v. Barksdale*, 2015 WL 5676895, at *3 (Del. Super. 2015) (new counsel was appointed to file motion to withdraw the guilty plea); *State v. Bonapart*, 2012 WL 6945113 (Del. Super. 2012) (same); *Jones v. State*, 2009 WL 2142497, *2 (Del. 2009) (this Court noted that after Jones filed a *pro se* motion to withdraw his plea, "new counsel was appointed for Jones and an evidentiary hearing was scheduled on the motion"); *White v. State*, 2000 WL 368313, at *1 (Del. 2000) ("We accept the State's confession of error and agree that the defendant was entitled to the appointment of counsel at the plea withdrawal hearing because it occurred prior to sentencing at a critical stage of the criminal process."). But this Court has also affirmed the Superior Court's refusal to appoint new counsel for a defendant seeking to withdraw a plea. *See, e.g., Mills v. State*, 2016 WL 97494 (Del. 2016); *Windsor v. State*, 2014 WL 4264915, at *3 (Del. 2014) (affirming Superior Court's refusal to consider application to withdraw a plea because counsel did not file it on defendant's behalf and noting that defendant did not apply under Rule 47

control of the objectives of the representation prior to sentencing requires that counsel either obey an instruction to file a motion to withdraw a guilty plea, or seek leave to withdraw so that the defendant can file the motion with other counsel or *pro se*. If the defendant's reasons for filing the motion to withdraw include an assertion that his or her counsel has been ineffective or coerced the defendant into pleading, then defense counsel should ask the court to appoint new unconflicted counsel to handle the filing of the motion. Even if counsel believes the defendant's motion is contrary to his interest or is without merit, a defendant's decision to attempt to withdraw a plea prior to sentencing cannot be overruled by counsel.[102] This, of course, does not mean that counsel may not urge the client to reconsider if counsel believe that a motion to withdraw the plea is unwise or contrary to the client's interests. As noted above, once the plea is accepted by the court, but before sentencing, a defendant's right to withdraw the plea is not unqualified (unlike his decision to plead prior to the court's acceptance of it).[103] Rather, the defendant must satisfy the court that he has a "fair and just" reason (as explained below).

---

to participate with counsel in portions of his defense); *Trotter v. State*, 2018 WL 6167322, at \*1 (Del. 2018) (the Superior Court did not err in denying defendant's *pro se* motion to withdraw his plea nor in refusing to appoint new counsel for him.).

[102] As this Court observed in *Cooke*, "the right to make these decisions is nullified if counsel can override them against defendant's wishes." 977 A.2d at 847. Thus, aside from counsel's failure to follow Reed's instruction to file a motion to withdraw his plea prior to sentencing, Reed's counsel was mistaken in their belief that Reed had to proffer new evidence of his innocence as a prerequisite to the filing of such motion.

[103] As Reed's Opening Brief acknowledges, "Autonomy in the plea decision is a fundamental right of the defendant that endures, *with conditions*, until sentencing." Op. Br. at 26 (emphasis added); *see also United States v. Sanchez-Barreto*, 93 F.3d at \*24 ("Once again we emphasize: there is no absolute right to withdraw a guilty plea.").

But our holding that Reed's counsel's performance was deficient for not filing a motion to withdraw his plea prior to sentencing does not end our analysis. To prevail under *Strickland*, Reed must satisfy the second *Strickland* inquiry and show that counsel's failure to file the motion caused him prejudice. We next address that inquiry.

### 3. Whether the Failure to File a Motion to Withdraw Prejudiced Reed

To satisfy *Strickland's* second prong, Reed "must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[104] A reasonable probability is a "probability sufficient to undermine confidence in the outcome," a standard lower than "more likely than not."[105] "The likelihood of a different result must be substantial, not just conceivable."[106] Thus, in the plea withdrawal context, Reed must show that there is some reasonable probability that but for counsel's error, Reed would have insisted on going to trial and the trial court would have granted his motion to withdraw the plea.

Under Rule 32(d), the Superior Court "may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason."[107] The decision whether to grant the motion "rests in the sound discretion of the trial court, and is reviewable only for abuse of discretion."[108] The trial court's discretion in considering a plea withdrawal motion must

---

[104] *Starling v. State*, 130 A.3d 316, 325 (Del. 2015) (quoting *Strickland*, 466 U.S. at 694).

[105] *Id.*

[106] *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 112 (2011)).

[107] Super. Ct. Crim. R. 32(d).

[108] *State v. Insley*, 141 A.2d 619, 622 (Del. 1958).

give due weight to the proceedings by which the plea was taken and the presumptively truthful statements the defendant made in the colloquy.[109] We have identified five questions, the "*Scarborough* factors," which the trial court must specifically examine in reaching its decision.[110] Though inquiry into each is mandatory, the *Scarborough* factors need not be weighed equally, and in the proper case the trial court may in its discretion find that "some of these factors of themselves may justify relief."[111]

Had counsel heeded Reed's instruction to file a motion to withdraw the plea, the trial court would have heard the motion and would have weighed whether the motion should be granted after applying the *Scarborough* factors. Because *Strickland* prejudice requires only a showing of a reasonable probability that the motion would be granted, this might suggest the anomalous result that *Strickland's* "reasonable probability" standard for prevailing on plea withdrawal is lower for a defendant than the Rule 32(d) "fair and just" standard standing alone.

---

[109] *Scarborough*, 938 A.2d at 649. We observed in *Scarborough v. State* that:

> Where the defendant has signed his Truth-in-Sentencing Guilty Plea Forms and has answered at the plea colloquy that he understands the effects of the plea, the defendant must show by clear and convincing evidence that he did not sign those forms knowingly and voluntarily.

*Id.* at 650.

[110] *Id.* The five factors are (1) was there a procedural defect in taking the plea, (2) did the defendant knowingly and voluntarily consent to the plea agreement, (3) does the defendant presently have a basis to assert legal innocence, (4) did the defendant have adequate legal counsel throughout the proceedings, and (5) does granting the motion prejudice the State or unduly inconvenience the Court? *Id.*

[111] *Id.* ("[t]hese factors are not factors to be balanced; indeed, some of the factors of themselves may justify relief.").

Although the effect of the *Strickland* prejudice test on the plea withdrawal standard is an issue of first impression in Delaware, several federal circuits considering *habeas* petitions based upon state convictions alleging an unreasonable failure to move to withdraw a plea have addressed the issue. Those courts have found that the defendant need only show that there is reasonable probability that the motion would have been granted in order to satisfy *Strickland*.[112] But the relief granted in those cases contemplated the defendant being permitted to litigate the underlying plea withdrawal standard, not an order vacating the plea.[113] We find these federal cases persuasive. Here our inquiry is limited to whether Reed is entitled to an evidentiary hearing to try to develop facts that would support his Rule 61 claims.

As with his Advice claim, we are not presently in a position to evaluate the merits of Reed's ineffective assistance claim as it relates to his Withdrawal challenge because

---

[112] *Ward v. Jenkins*, 613 F.3d 692, 701 (7th Cir. 2010) ("We need not decide whether Ward's assertions definitively constitute a 'fair and just' basis for withdrawal of his plea; we need only determine whether there was a reasonable probability that a Wisconsin court would so conclude."); *Holtan v. Parratt*, 683 F.2d 1163, 1170–71 (8th Cir. 1982) ("All we are saying is that where, as a result of ineffective assistance of counsel, a petitioner has been denied the opportunity to request withdrawal of his plea of guilty or nolo contendere, and where he has shown that there is a substantial probability that he would have succeeded in such a request, then an adequate showing of prejudice has been made.").

[113] *See Ward*, 613 F.3d at 701 ("Ward is entitled to an evidentiary hearing regarding his claim that [counsel] rendered ineffective assistance of counsel by refusing to file a motion to withdraw Ward's guilty plea."); *Holtan*, 683 F.2d at 1171 ("We do not now direct issuance of the writ of habeas corpus nor do we either suggest or require vacation of Holtan's conviction. . . appellant shall by appropriate pleading request of the Nebraska courts leave to withdraw his plea of nolo contendere. . . ."). *But see Brown v. United States*, 2017 WL 3142102, at \*2–3, \*7 (W.D. Va. July 24, 2017) (unreported case) (considering a postconviction motion challenging counsel's failure to file a motion to withdraw a *federal* guilty plea, the federal District Court applied the plea-withdrawal test directly).

certain critical facts have not been developed.[114]  Because the trial court assumed that Reed had rescinded his instructions to counsel to withdraw the guilty plea prior to sentencing, the Superior Court considered whether grounds to withdraw the plea existed only hypothetically, and without conducting the specific factual inquiries mandated by *Scarborough*.  As detailed above, it appears to us that the court was mistaken as to certain of its factual findings in this regard.  Also, because the court concluded that the first prong of *Strickland* concerning deficient performance had not been violated, it never considered the prejudice part of the *Strickland* analysis.

As a result, on remand, the trial court should conduct an evidentiary hearing and additional fact-finding.  Of particular importance is the precise content of counsel's advice to Reed about how his race, or the racial mix of the Sussex County jury pool, would affect his trial prospects and the impact of any such advice on the voluntariness of his plea.  The Superior Court should also determine, through additional fact-finding whether Reed at any point rescinded his instructions to counsel to withdraw his guilty plea and whether his counsel appropriately considered the *Scarborough* factors when they decided to override Reed's instructions regarding the plea withdrawal motion.  The Superior Court should then address Reed's Rule 61 challenges considered herein in view of the evidentiary record as further developed.[115]

---

[114] *See Matheney v. Anderson*, 253 F.3d 1025, 1040 (7th Cir. 2001) ("An adequate record is imperative to properly evaluate ineffective assistance claims.").

[115] As the United States Supreme Court in *Strickland* held, courts must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  466 U.S. at 690.

Finally, we emphasize that Reed should confer with counsel and carefully consider whether he fully understands the ramifications of the relief he seeks.[116] In Reed's case, the trial court, based upon the record before it (although limited and not fully developed),[117] noted the strength of the evidence against Reed. The court also comprehensively recounted the extensive aggravating sentencing factors and absence of mitigating factors present in Reed's case.[118] We note that based on the content of the sentencing hearing, it appears that counsel's negotiation of the plea eliminated the PFBPP count and reduced the Murder First Degree count to manslaughter, resulting in a substantial reduction in the sentence Reed would otherwise have likely faced (including potentially life in prison) if he were convicted at trial or if his plea were for the same charges as his codefendant. Without the protection of the plea agreement, the State would be free to reassert the charges on which it previously entered *nolle prosequi* pursuant to the plea. As a result, Reed should proceed with the awareness that prevailing on his postconviction motion could possibly result in a trial and conviction and a longer custodial sentence than the one he is currently serving.[119]

---

[116] *See Ward*, 613 F.3d at 701 n.3 (noting that the defendant had already served the custodial sentence in the plea agreement but could receive a far longer sentence if prosecutors reasserted the charges dropped pursuant to the agreement and prevailed at trial).

[117] The Superior Court aptly observed that "[w]ithout a trial it is always difficult for a trial judge to fully evaluate the evidence." *Trial Ct. Op.* at *3. But the court also remarked that it had "seen more than enough of the evidence to know that it was far stronger against Reed then he now attempts to portray." *Id*.

[118] A143–44.

[119] *See, e.g., Padilla*, 559 U.S. at 372–73 (noting that "[t]hose who collaterally attack their guilty pleas lose the benefit of the bargain obtained as a result of the plea," and that such a collateral challenge "may result in a *less favorable* outcome for the defendant . . .") (Emphasis in original).

*V.        Conclusion*

Based upon the foregoing, this matter is **REVERSED** and **REMANDED** to the Superior Court to conduct additional proceedings in accordance with this opinion.

**VAUGHN**, Justice, concurring in the Court's judgment:

I agree that the case should be remanded for an evidentiary hearing. I think that after a full hearing, the Superior Court judge should then determine whether or not the defendant was deprived of effective assistance of counsel by applying the two-prong test of *Strickland* to the facts as he finds them.